## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| Fitton | Civil Action No. 6:15-02894 |
| versus | Magistrate Judge Carol B. Whitehurst |
| U.S. Commissioner Social Security Administration | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

## ADMINISTRATIVE PROCEEDINGS

The claimant, Sharon Elaine Fitton, fully exhausted her administrative remedies prior to filing this action in federal court. The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning May 27, 2011.[1] Her applications were denied.[2] The claimant requested a hearing,[3] which was held on May

---

[1] *R. 10, Ruling, p. 25.*

[2] *Id. at pp. 25 - 33.*

[3] *Id. at pp. 39 - 55.*

1

15, 2014, before Administrative Law Judge John H. Maclean.[4] The ALJ issued a decision on August 12, 2014,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act from May 27, 2011 through the date of the decision. The claimant asked for review of the decision, but the Appeals Council concluded on November 6, 2015 that there was no basis for review.[6] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The Claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on July 2, 1964.[7] At the time of the ALJ's decision, she was forty-six years old. She graduated from high school,[8] and has past relevant work experience working for Lowe's as a cashier, convenience store manager, convenience store cashier and medical transport company driver.[9] She alleges that she has been

---

[4]     *Id. at pp. 25-33.*

[5]     *Id.*

[6]     *Id., Appeals Council, pp. 1 - 6.*

[7]     *Id. at p. 187.*

[8]     *Id. at p. 233.*

[9]     *Id. at p. 234.*

disabled since May 27, 2011[10] due to rheumatoid arthritis, degenerative joint disease of the left shoulder, diminished vision, migraines and asthma.

On September 6, 2011, the claimant was first seen at East Georgia Regional Medical Center with complaints of left ear pain and a cough. Her history included hypertension, rheumatoid arthritis, migraines and asthma. It was noted that she denied threats or abuse and that she was a smoker.[11] She was given an antibiotic and discharged. The claimant was seen again on September 26, 2011, following a motor vehicle accident.  X-rays of her pelvic and left knee were normal and her left shoulder demonstrated mild degenerative changes of the AC joint.[12] On October 23, 2011, she again presented with complaints of migraine headaches since the motor vehicle accident.[13] At that time she denied tobacco use.[14] She was discharged with Motrin.[15] On April 17, 2012, following another motor vehicle accident, the claimant presented with pain in the left temple, shoulder and knee.[16] Her visual acuity was noted as 20/25

---

[10]     *Id. at pp. 56 - 57.*

[11]     *Id. at pp. 347 - 348.*

[12]     *Id. at pp. 332, 441.*

[13]     *Id. at pp. 366 - 368.*

[14]     *Id.*

[15]     *Id.*

[16]     *Id. at p. 359.*

in the left eye and 20/20 in the right eye.[17] She left the facility following triage "due to unknown reason."[18]

On July 14, 2012, Dr. Lee McGill, performed a disability determination examination on the claimant. Upon examining the complainant's spine and extremities, Dr. McGill found full range of motion of her knees with limited range of motion on abduction and forward elevation of the right shoulder. Dr. McGill opined the claimant would have difficulty lifting heavy items as well as pushing and pulling with her right arm. The claimant's eye chart examination was 20/200 in both eyes with no evident abnormality. Dr. McGill indicated the claimant would be referred for an ophthalmology consultation.[19]

The September 10, 2012 records of the claimant's ophthalmology examination with Dr. Smalley at Vidalia Eye Associates, provided that the claimant stated she had been gradually experiencing loss of vision  and "intermittent migraine headaches" related to spousal physical abuse dating back to May 2011 in which she was struck in the head with a bat several times.[20] Dr. Smalley's notes indicated, Visual fields–"I am a little doubtful about" based on the "large number of false positive and false

---

[17]     *Id. at p. 360.*

[18]     *Id. at p. 361.*

[19]     *Id. at pp.  334-336.*

[20]     *Id. at pp. 402-403.*

negative errors" in the right eye and "no distinct pattern of vision loss" on the left eye.[21] Dr. Smalley recommended yearly follow-up exams for ocular hypertension.

The claimant was seen by Dr. Moogerfeld on December 20, 2012 for a disability physical. She stated that she had rheumatoid arthritis, was "legally blind in the left eye," as she had "good results" with Imitrex for her migraine headaches, and had attempted to quit smoking two times.[22] Dr. Moogerfeld found that the claimant's right shoulder range of motion (ROM) was completely normal, her left shoulder ROM demonstrated functional impairment.[23] Her final assessment provided that the claimant exhibited functional impairment due to rheumatoid arthritis, no functional impairment due to asthma, her migraine headaches were currently stable and noted the need to obtain her vision records.[24]

On January 16, 2013, the radiology report of East Georgia Regional Medical Center indicted that x-rays of the claimant's knees, left hip and left shoulder  were normal.[25] On February 14, 2013 the claimant was examined by Dr. Schere at St.

---

[21]     *Id.*

[22]     *Id. at p. 421.*

[23]     *Id. at pp. 423-425.*

[24]     *Id.*

[25]     *Id. at pp. 444-448.*

5

Joseph's Hospital.[26] While the claimant reported that she could only see 20/200 in both eyes, her OTO-Neurology Test Summary provided "normal visual evoked potential in both eyes."[27] On December 16, 2013, the claimant was examined by Dr. Kenneth Johnson, an orthopedist with East Georgia Orthopedic Center. *R. 48* Dr. Johnson found no evidence of bone pathology.[28]

The claimant established as a new patient with Dr. Okungbowa on November 5, 2013 at which time she indicated that she was a current smoker, smoking 11-20 cigarettes per day, and that her medical history included asthma, hypertension, shoulder surgery and a broken pelvis.[29] Dr. Okungbowa ordered blood tests, including a rheumatoid factor, and allergy testing. The claimant's rheumatoid factor was negative but she was administered allergy shot treatments from December 23, 2013 through April 24, 2014.[30]

On February 18, 2014, the complainant presented to Dr. Okungbowa for a note advising of her medical condition as she was required to perform community service for committing an aggravated assault. At that time, none of Dr. Okungbowa's office

---

[26]     *Id. at 450- 451.*

[27]     *Id.*

[28]     *Id. at p. 567.*

[29]     *Id. at p. 520.*

[30]     *Id. at pp. 532-564.*

notes provided any indication that the claimant had abnormalities in her extremities or her gait. Rather, his notes on that date stated that she had "normal range of motion all joints, no trigger points on joints."[31] He ultimately stated that the claimant used a walker, but had no obvious deformity and diagnosed "non specific disability, ? Malingering."[32] At that time the claimant's medication regimen included Atorvastatin Calcium, Cyclobenzaprine, Ibuprofen, Percocet, Ventolin, Aerosol Solution, Lisinopril, Zyrtec and Mobic.[33]

At the May 15, 2014 hearing, the claimant testified that she could see but could not read out of her left eye.[34] She stated that she had been tested (with x-rays) for rheumatoid arthritis and the results were positive. She stated she had been prescribed physical therapy but it only exacerbated her pain.[35] She confirmed that she uses her inhaler and that her migraine medication, Imitrex, works but causes nausea for which she takes another medication.[36]  She stated that she quit smoking in 2012 and that her

---

[31]     *Id. at pp. 552-553.*

[32]     *Id.*

[33]     *Id.*

[34]     *Id., hearing transcript, p. 44.*

[35]     *Id.*

[36]     *Id. at p. 45*

asthma had improved.[37] She further stated that Dr. Okungbowa prescribed her walking cane and wanted her to have a knee replacement.[38] She stated that she had not worked since she left her job at Lowe's.[39] She stated that she lives with her daughter in an apartment, does no housework or cooking, has no hobbies and mostly spends her day watching TV or sleeping.

In her brief opposing the Commissioner's ruling, the claimant argues, "[t]he evidence as [a] whole both medical and non-medical is sufficient to support [her] claim of disability."[40] She asserts that she has enclosed "a few ... medical exams ... that support [her] claim." She further argues that  the Agency found she was "disabled, but can't decide which year" her disability began.[41] Thus, the claimant contends that she is disabled, and she seeks to have the Commissioner's adverse ruling reversed.

## ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited

---

[37]    *Id. at p. 52.*

[38]    *Id. at p. 46.*

[39]    *Id. at p. 48.*

[40]    *R. 11, p. 1.*

[41]    *Id.*

to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[42]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[43]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[44]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[45]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[46]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[47]  Four elements of proof are weighed by the courts in determining if

---

[42]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[43]     *Villa* at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[44]     *Hames*  at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[45]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[46]     *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)(citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).

[47]     *Martinez* at 174.

substantial evidence supports the Commissioner's determination:   (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[48]

**B.**    **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[49]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[50]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[51]   A claimant shall be determined to be disabled only if his physical or mental impairment

---

[48]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez*  at 174.

[49]    See 42 U.S.C. § 423(a).

[50]    42 U.S.C. § 1382(a)(1) & (2).

[51]    42 U.S.C. § 1382c(a)(3)(A).

10

or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[52]

## C.    Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[53]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[54]

---

[52]     42 U.S.C. § 1382c(a)(3)(B).

[53]     20 C.F.R. § 404.1520; see, e.g., *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[54]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[55] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[56]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[57]

The claimant bears the burden of proof on the first four steps.[58]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[59]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[60]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[61]   If the Commissioner determines that the claimant is disabled or

---

[55]     20 C.F.R. § 404.1520(a)(4).

[56]     20 C.F.R. § 404.1545(a)(1).

[57]     20 C.F.R. § 404.1520(e).

[58]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Newton*, 209 F.3d at 453.

[59]     *Id.*

[60]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[61]     *Perez* at 461; *Masterson* at 272; *Newton* at 453.

not disabled at any step, the analysis ends.[62]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[63]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[64]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[65]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[66]

## D. The ALJ's Findings and Conclusions

In this case, the ALJ determined at step one, that the claimant has not engaged

---

[62]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988)).  *See, also*, 20 C.F.R. § 404.1520(a)(4).

[63]      42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[64]      *Hollis*, 837 F.2d at 1383; *Villa*, 895 F.2d at 1021; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[65]      *Martinez* at 174.

[66]      *Wren*, 925 F.2d at126; *Martinez* at 174.

in substantial gainful activity since May 2, 2011.[67] This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: rheumatoid arthritis, degenerative joint disease of the left shoulder, asthma, diminished vision in the left eye, and obesity.[68] This finding is supported by evidence in the record and is not challenged by the claimant.

At step three, the ALJ found that the claimant has no impairment or combination  of impairments that meets or medically equals the severity of a listed impairment.[69] The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the light level except that she it limited to occasional crouching, kneeling, crawling and stooping; can have no exposure to heavy fumes or dust; is limited to occasional work at heights; can not engage in overhead lifting with the left shoulder; and can not engage in tasks requiring fine visual acuity or depth perception.[70] The Court assumes that the claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing any

---

[67]   *R. 10, Ruling,  p.  27.*

[68]   *Id.*

[69]   *Id.*

[70]   *Id.*

14

of her past relevant work.[71] The claimant does not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from May 27, 2011 through August 12, 2014 (the date of the decision) because there are jobs in the national economy that she can perform.[72]

**E. The Allegations of Error**

Ms. Fitton generally claims that the ALJ erred in concluding that she is not disabled and was not entitled to a period of disability. More specifically, Ms. Fitton claims that the ALJ failed to properly consider the evidence in making his decision.

As to the claimant's assertion that the Agency found she was disabled but could not determine when her disability began. It appears to this Court that Ms. Fitton was referring to the Appeal Council's letter declining to review the ALJ's August 12, 2014 decision based on her evidence submitted after the relevant period ended. While the Appeals Council in no way stated or implied that the claimant was found to be disabled, the claimant appears to be referring to a "Disabled Person's Parking Affidavit" attached to her brief, in which she was apparently issued a disabled parking permit.[73] The Court will not address this contention as it is not an alleged

---

[71]   *Id. at p. 31.*

[72]   *Id. at p. 32.*

[73]   *Id. at p. 13.*

error of the ALJ.

## F. The Claimant's General Allegations of Error

An assignment of error such as that asserted by the claimant, that the ALJ erred in reaching the ultimate conclusion that the claimant is not disabled and erred in not ordering a period of disability, is too general to be considered by the Court. The Court's scheduling order requires a claimant to set forth the specific errors committed at the administrative level and states that a general allegations that the ALJ's findings are unsupported by substantial evidence is insufficient to invoke the appellate function of the Court. The claimant's briefing fails to satisfy these minimal requirements. As the claimant is *pro se* the Court will first determine whether the ALJ properly advised the claimant of her right to retain counsel and then review the findings the ALJ made against the claimant, that is, the evidence used in making the determination and the finding that the claimant was not credible.

## G.   Did The ALJ Fully Advised Ms. Fitton Of Her Right To Representation?

A Social Security claimant such as Ms. Fitton has a statutory right to be represented by counsel or another qualified person at a hearing.[74]  "A claimant is entitled to adequate notice of her right to counsel at a hearing before an ALJ."[75]  The

---

[74]      42 U.S.C. § 406; 20 C.F.R. § 404.1700.

[75]      *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003).

16

claimant may waive this right if given sufficient information to enable her to decide intelligently whether to retain counsel or proceed pro se.[76] A claimant may not have sufficient information to make an intelligent waiver unless she receives an explanation of the possibility of free counsel or a contingency arrangement, and the limitation on attorney's fees to 25% of past due benefits awarded.[77]

In this case, Ms. Fitton appeared at the hearing before the ALJ without her attorney. When asked about her attorney situation by the ALJ, she stated that her attorney informed her the day before that she would not be attending the hearing with the claimant. The ALJ then provided Ms. Fitton with the waiver of representation form and went over the form with her.  He stated:

> We have a form and I'll go over the form. The form says that apparently you don't have a lawyer or representative anymore. Although we don't have a withdrawal, you're telling this Court that they called you yesterday and said they weren't going to show. So you have the right to ask me to postpone this hearing to give you time to find a lawyer or representative. And if you do, we will postpone for about two months, give you that time. Then we'll come back here and do this all over again. A lawyer or representative can help your case by collecting evidence, arguing your case. They may not charge you a fee without my approval and even then, from back benefits if any. They may charge you for out of pocket costs like phone calls and fax machines, things like that. And there are some organizations like legal aid that will occasionally take these cases without charge. So you have the right to ask me to postpone.

---

[76]     *Stansel v. Shalala*, 41 F.3d 664, 1994 WL 684761, at *1 (5th Cir. 1994)(citing *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir. 1981)).

[77]     *Clark* at 403-04.

17

And if you do, I'll certainly do that and we'll come back here in about two months. Now, you also have the right to ask me to go forward with the case if you want to. [78]

Ms. Fitton stated that she wished to go forward.[79]

To ensure valid waiver of the right to counsel, the ALJ must explain to the pro se claimant the manner in which an attorney can aid in proceedings, possibility of free counsel or contingency arrangement, limitation on attorney fees to 25 percent of past due benefits, and required court approval of fees.[80] The undersigned finds that the ALJ met his burden of explaining the claimant's waiver of counsel.

## H. Does Substantial Evidence Support the ALJ 's Disability Determination?

In assessing the claimant's Residual Functional Capacity ("RFC"), the ALJ properly reviewed the medical and non-medical evidence.[81] The RFC finding is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work-related physical and mental activities. The RFC is based on the totality of the evidence and this assessment of a claimant's work capacity is a determination

---

[78]     *R. 10, p. 42.*

[79]     *Id.*

[80]     42 U.S.C.A. § 406; 20 C.F.R § 404.1700; *Clark*, 652 F.2d at 403.

[81]     *R. 10, Ruling, pp. 28-31.*

18

reserved solely to the ALJ.[82] An ALJ correctly considers all of the evidence, not just the medical evidence, in assessing a claimant's RFC.[83] The ALJ weighs the evidence and makes the RFC assessment, not the claimant.[84]

In determining that the claimant was not disabled but could perform some light work activity, the ALJ thoroughly reviewed  the claimant's medical records as well as her non-medical records. He found it significant that the state agency medical experts "universally opined the claimant could perform less than light work" and was not disabled.[85] He noted that the claimant's commission of aggravated assault during her alleged period of disability confirmed the examinations in which she demonstrated only few range of motion deficits and few pathologies indicated in imaging studies. He further noted that she required no significant treatment for her arthritis and continued to smoke despite her asthma. Based on this evidence, the ALJ determined there was "no credible evidence that [the claimant's] limitations [we]re greater than indicated by the state agency experts."[86] Here, the ALJ correctly considered all of the evidence and the evidence as a whole provides substantial

---

[82]     *See Ripley*, 67 F.3d at 557; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)

[83]     *Id.*

[84]     *Carey*, 230 F.3d. at 135.

[85]     *R. 10, Ruling, p. 31 (citing Exhs. 2A; 5A).*

[86]     *Id. at p. 31.*

support for his decision.

## H. Did the ALJ Improperly Evaluate the Claimant's Credibility?

The ALJ concluded that the claimant has medically determinable impairments that could reasonably be expected to cause her alleged symptoms, but opined that her statements regarding the severity, persistence and limiting effects of her symptoms were not credible:[87]

(1) statements regarding her activities of daily living

The ALJ found that the claimant was inconsistent in her statements regarding her activities of daily living. He observed that on June 1, 2012, the claimant stated that she sometimes goes shopping alone and with her daughter, while on July 14, 2012, she told a consultative examiner that she did not shop at all.

(2) allegations that she has significant left knee dysfunction

The claimant alleged at the hearing that she had such significant left knee dysfunction that her treating physician recommended a knee replacement. Her imaging studies, however, showed no pathologies of the left knee an in early 2014 she denied any joint pain. Before March of 2014, the claimant displayed no pain on range of motion in the left knee. Thus, the ALJ found her credibility as her own medical historian significantly lessened.

---

[87]     *See, Id., Ruling, at pp. 25-33.*

(3) allegations as to her visual limitations

Despite the claimant's own allegations of visual limitations, the ALJ found that her statements to physicians and validity problems with her presentation reduced her credibility considerably. He noted, in April of 2012 her visual acuity in the right eye was 20/20, and in the left eye was 20/25. In July of 2014, she demonstrate no visual limitations in a consultation exam and on the follow-up ophthalmology examination she demonstrate too many false positives and negatives for the findings to be valid. In a third consultation examination, the claimant stated she was unable to read any of the visual acuity chart. Finally, in a fourth consultation examination in February of 2013, her visual acuity was 20/200 in both eyes. Later, over several years of treatment with her treating physician she denied any visual problems. The ALJ found that these inconsistencies undermined her credibility considerably.

(4) allegations as to her asthma

The fact that the claimant smokes 11 - 20 cigarettes per day, has no respiratory abnormalities on examination and has never been hospitalized for an asthma exacerbation undermines any abnormal pulmonary function tests.

(5) allegations as to her rheumatoid arthritis

The ALJ found that the claimant has rheumatoid arthritis but is negative for the rheumatoid factor, requires no specialized treatment and demonstrates no deformities

of any joint. Her strength/grip test results are inconsistent and are also inconsistent with the objective evidence with regard to her activities. He further found that the claimant does have degenerative joint disease of the left shoulder. While her limited range of motion indicates she should not perform overhead lifting, the minimal abnormal findings on the objective imaging studies along with her frequent asymptomatic presentation upon examination indicates she has no greater limitations.

This Court finds that the ALJ's evaluation of Ms. Fitton's credibility was conducted in accordance with the required legal standards and is supported by substantial evidence in the record, as provided in the disability applications, the medical records and the hearing transcript.

Therefore, the ALJ's analysis of the claimant's credibility is supported by substantial evidence in the record. When an ALJ's credibility determination is supported by substantial evidence, it is entitled to judicial deference.[88] Having found that the ALJ in this case applied the proper legal standard in evaluating the claimant's credibility and having found that the ALJ's evaluation was supported by substantial evidence, this Court defers to the ALJ's credibility analysis.

## CONCLUSION

The undersigned finds that the ALJ applied appropriate legal standards in

---

[88]     *Villa*, 895 F.2d at 1024.

ruling on this case, and the ALJ's findings are based on substantial evidence in the record. Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED** and this matter is dismissed with prejudice.

Signed in Lafayette, Louisiana, this 12th day of January, 2017.

_____

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**